```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JAMES MITCHELL,                    )
                                   )
           Petitioner,             )   Civil Action No. 06-945
                                   )
      v.                           )   Chief Judge Ambrose
                                   )   Magistrate Judge Caiazza
EDWARD KLEM, et al.,               )
                                   )
           Respondents.            )
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

### I. RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus filed by James Mitchell be dismissed and that a certificate of appealability be denied.

### II. REPORT

James Mitchell ("Mitchell" or "the Petitioner"), a state prisoner, has filed a federal habeas corpus petition challenging his May, 1998 conviction for Criminal Homicide in the Court of Common Pleas of Allegheny County, Pennsylvania. Mitchell was convicted of the April 13, 1996 drive-by shooting of Tyrell Hinton, and sentenced to life imprisonment plus three and one-half to seven years for a weapons offense. Evidence was admitted at trial suggesting the killing was motivated by a gang rivalry. Mitchell's trial counsel attempted to discredit the investigating City of Pittsburgh police officers, and eyewitnesses to the Hinton killing who were members of a rival gang, by introducing

evidence concerning a separate incident which occurred on June 26, 1996. In that incident, another Pittsburgh Police Officer, Officer John Wilbur ("Wilbur"), was seriously injured when he was dragged by a car driven by Mitchell. Significantly, there was no identification of Mitchell as the shooter in the Hinton killing of April 13, 1996 - until after the Wilbur incident of June 26, 1996, and the attendant publicity.

The Petitioner raises five claims in this federal habeas petition:

> 1. Trial counsel rendered ineffective assistance by her decision to inundate Petitioner's murder trial with testimony and references to the Wilbur case.
>
> 2. Trial counsel rendered ineffective assistance by her failure to request a cautionary/limiting instruction for the testimony and references to the Wilbur case.
>
> 3. Trial counsel rendered ineffective assistance by her decision to introduce irrelevant prejudicial evidence of her own personal animus with investigating Pittsburgh Police.
>
> 4. The introduction of pretrial gang evidence denied Petitioner a fair trial and due process of law.
>
> 5. Trial and appellate counsel rendered ineffective assistance by failure to assert constitutional error on appeal regarding the trial court's ruling that barred defense introduction of a United States Department of Justice investigation prospective testimony.

Doc. 1, at 6.[1]

## 1. The State Court Rulings.

Trial counsel, Wendy L. Williams ("Williams"), was called to testify at a hearing held in the state court after Mitchell filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §9541, et seq. Mitchell's PCRA claim was denied by the trial court. Subsequently, the Pennsylvania Superior Court affirmed the denial of PCRA relief. Addressing the first issue raised by Mitchell in his federal habeas petition, the PCRA court found Mitchell failed to demonstrate "that trial counsel had no reasonable basis for introducing evidence of the Officer Wilbur incident . . . " and that the claim of ineffective assistance of counsel failed on that basis. Doc. 13, Commw. Ex. 31 at 11. In essence, the Superior Court found that Williams formed a strategy reasonably designed to further her client's interest at trial.

In its PCRA opinion, the Superior Court also addressed the second claim raised by Mitchell in his habeas claim – that counsel failed to request a limiting instruction concerning Mitchell's involvement in the Wilbur incident, and specifically, an instruction under Pennsylvania law with respect to unrelated

---

1. The Court will dispense with a discussion of exhaustion and procedural default since the issues raised by the Petitioner were correctly decided by the state courts on their merits. See, 28 U.S.C. § 2254(b)(2) (federal habeas court may reject claim on merits without reaching question of exhaustion).

criminal activity. The state court found that Mitchell failed to establish the requisite prejudice for four reasons: (1) the evidence of the Wilbur incident was part of a reasonable trial strategy to impeach the investigating officers and the eyewitnesses; (2) Mitchell was aware of counsel's trial strategy and did not object; (3) the jury was not told of Mitchell's specific involvement in the Wilbur incident, nor were the specific details of the Wilbur incident placed on the record; and (4) there was "strong independent evidence of [Mitchell's] role in the murder." Doc. 13, Commw. Ex. 31 at 17-18.

Commenting on Mitchell's third issue raised in this federal habeas action, the Superior Court in its PCRA ruling concluded that Williams' tactic of eliciting testimony concerning animosity directed at her by the investigating officers amounted to reasonable trial strategy:

> While the [evidence of police animus toward Williams] may have become 'a distraction' . . . it demonstrated negative police feelings created by the Officer Wilbur incident and directed at Attorney Williams and through her, at Appellant. Thus, Attorney Williams was not ineffective for trying to discredit the police by introducing [evidence of] their animosity toward herself and her client.

Doc. 13, Commw. Ex. 31 at 23.

In addressing the Petitioner's fourth claim, this time on direct appeal, the Superior Court detailed the overwhelming evidence presented at trial showing that Hinton's murder was a

gang-related shooting as well as the evidence -including gang identification tattoos- showing that the victim was a member of a rival gang. Doc. 12, Commw. Ex. 16 at 6-7. The Court then concluded that evidence of gang-related activity was properly admitted under Pennsylvania law since it was probative with respect to the issue of motive.

Mitchell's fifth and final claim is that direct appeal counsel should have challenged the trial court's decision to disallow evidence which would have shown that a Commonwealth witness, who had already been identified as a member of a gang, was involved in numerous robberies and heroin use. The trial court denied the defense request because it constituted inadmissible hearsay evidence under Pennsylvania law. Doc. 12, Commw. Ex. 12 at 26.

2. **The Applicable Law**.

A federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Further, a federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to" or an "unreasonable application of" clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). "Under §2254(d)(1)'s unreasonable application clause, then, a federal

habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.". Williams v. Taylor, 529 U.S. 362, 411 (2000).

Four of the Petitioner's five claims are framed in terms of ineffective assistance of counsel issues. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Id. at 690.

The first prong of the Strickland test requires a defendant to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 688. A court must in-

dulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689.  The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the relevant time and place. Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him or her of a fair trial and the result was unfair or unreliable. Id. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

3. **The Analysis**.

Mitchell's first claim of ineffective assistance is the quintessential case of a criminal defendant being disappointed by the outcome of what was, at the time of trial, a reasonable strategy designed to further his defense. The state courts, after a full evidentiary hearing at which trial counsel Williams testified, concluded that she was attempting to discredit both the investigating officers and the eyewitnesses to the Hinton

killing by introducing evidence of the Wilbur incident.[2] This factual finding is entitled to a presumption of correctness, and is accurate. The Petitioner's burden, then, is to establish that William's decision was not "sound trial strategy." Strickland, 466 U.S. at 689. The state courts found that the Petitioner had failed to satisfy his burden.

The state court used an appropriate standard in analyzing the ineffective assistance claim. Medina v. Diguglielmo, 461 F.3d 417, 427-28 (3d Cir. 2006)(first step in Strickland analysis is to show that counsel's performance fell below an objective standard of reasonableness); Diggs v. Owens, 833 F.2d 439, 446 (3d Cir.1987)(trial counsel's decision not to call a particular witness was strategically sound despite being based on a potentially erroneous legal assumption). Here, counsel dwelled well within the bounds of reasonable trial strategy by attempting to establish that the investigation in this case was influenced by Mitchell's involvement in Officer Wilbur's injuries. "The Sixth Amendment's guarantee of effective assistance of counsel is satisfied if counsel's choice of defense tactics was the result

---

2. The state court's determination that trial counsel had a strategy that she employed when she decided to introduce evidence of the Wilbur incident is a question of fact that is supported by the record and is not rebutted. Berryman v. Morton, 100 F.3d 1089, 1095 (3d Cir.1996); 28 U.S.C. § 2254(e)(1). On the other hand, the reasonableness of the strategy employed by trial counsel involves the application of legal principles and goes to the performance prong of the Strickland test. Morton, 100 F.3d at 1095; see also 28 U.S.C. § 2254(d).

of an informed, professional judgment made after a reasonable investigation into the facts of a case and the relevant law." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). Here, the state court's conclusion was a reasonable application of federal law because counsel clearly made a strategic decision to focus upon the possible distorting effects of her client's involvement in the Wilbur incident. When a decision falls within the realm of "strategic decisions", a reviewing court may find attorney decisions "to be sufficiently deficient *only* if [s]he either failed completely to consult with h[er] client, or if the decision was itself inept or incapable of interpretation as sound." United States v. Narducci, 18 F.Supp.2d 481, 493 (E.D.Pa.1997)(emphasis added). Here, trial counsel's strategy, even if ultimately unsuccessful, was reasonable trial strategy which, parenthetically, she discussed in detail with her client.

The state courts resolved Mitchell's second claim - that counsel failed to request an instruction on other crimes evidence - by determining that he failed to establish the requisite prejudice. The performance and prejudice prongs of Strickland may be addressed in either order, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Strickland, 466 U.S. at 697.  If no prejudice has accrued to a criminal defendant from counsel's asserted error, a claim of ineffective assistance

must fail. Parrish v. Fulcomer, 150 F.3d 326, 327 (3d Cir. 1998)(counsel will not be deemed ineffective for failing to present an argument without merit).

Here, the state court made two factual findings which inform this court's analysis. First, the state court determined that the jury, while informed generally about the Wilbur incident, was not told the manner in which Mitchell was involved in the incident. Second, the jury was not informed that Mitchell had been convicted of a crime with respect to the Wilbur incident, but would have been made privy to that fact had the instruction on "prior crimes" been given. Doc. 12, Commw. Ex. 31 at 18. Both of these findings are entitled to a presumption of correctness, and each militates against a finding that the lack of an instruction concerning "prior crimes" evidence caused Mitchell prejudice. The jury was presented with evidence from which they could determine that the police had reason to be biased against the Petitioner, but they were not told that he had committed a crime. All factors considered, the state court's determination is not an unreasonable application of federal law since it does not appear that the failure to instruct the jury with respect to "other crimes" caused Mitchell to suffer any prejudice. Strickland, 466 U.S. at 694 (prejudice established by reasonable probability that, absent counsel asserted error, the result at trial would have been different).

Mitchell's third claim is that counsel was ineffective for injecting into the trial the asserted animus which the investigating officers had towards *her* arising from the Wilbur incident. Specifically, that evidence was counsel's photograph, which was displayed on one of the investigating officer's desks - adorned with derogatory statements. Doc. 12, Commw. Ex. 12 at 29-30. Again, the state courts found that counsel's strategy was to show that the Wilbur incident may have generated animosity toward her and her client, causing the investigating officers to lose their objectivity. Doc. 13, Commw. Ex. 31 at 23-24. This judicial finding, premised on reasonable trial strategy framed by Williams, is entitled to a presumption of correctness.

In his fourth claim, Mitchell argues that the trial court erred by admitting evidence of his gang membership. The state court's ruling, however, is clearly consistent with federal law because it is probative of the motive issue. See, Brewer v. Northern Dist. of Oklahoma Mike Mullin, 169 Fed.Appx. 517 (10th Cir. 2006)(admission of evidence of gang membership to establish motive did not make state trial fundamentally unfair); U.S. v. Jobson, 102 F.3d 214 (6th Cir. 1996)(evidence of gang affiliation admissible under federal law to show opportunity); U.S. v. Thomas, 86 F.3d 647 (7th Cir. 1996)(gang evidence admissible in federal prosecution since it demonstrates existence of conspiracy).

Lastly, Mitchell asserts that appellate counsel was ineffective for failing to argue that the trial court erred in excluding evidence showing that one of the eyewitnesses had been involved in gang activities, and specifically that he had used heroin and committed robberies. The source of the information sought to be introduced by Mitchell was prosecution witness and Allegheny County Assistant District Attorney Dan Konieczka who, in turn, obtained the information by interviewing gang members. Doc. 12, Commw. Ex. 12 at 26. Defense counsel informed the court that the declarants were in federal custody and were unavailable to testify at the time of trial.

The state court ruled that the proposed testimony from Assistant District Attorney Konieczka consisted of out-of-court statements elicited from third parties and that it was offered to prove the truth of the matter asserted, i.e., the eyewitness's alleged drug use and involvement in crimes. After its preliminary findings, the court ruled the proposed testimony as inadmissible hearsay under Pennsylvania law.

In order to succeed on a claim of ineffective assistance of counsel for failing to raise a particular claim, a petitioner must establish that the underlying claim has merit. <u>Parrish</u>, 150 F.3d at 327 (counsel will not be deemed ineffective for failing to present an argument without merit). Here, the trial court's ruling is proper under state law. It is also consistent with

federal law. The Federal Rules of Evidence, and specifically Rule 804(b), provide limited exceptions allowing the admission of hearsay statements where the declarant is unavailable. None of the exceptions listed in the rule are applicable here. Therefore, counsel cannot be found ineffective for failing to raise an appellate claim having no merit.[3]

3. **A Certificate of Appealability**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). Because the Petitioner has not made such a showing, a certificate of appealability should be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.1.4 B, the Petitioner, James Mitchell, is allowed until June 18, 2007 to file written objections to this Report. Responses are due June 28, 2007.

---

3. And, in any event, the underlying issue involves a matter of state evidentiary law, and does not rise to constitutional magnitude. See Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997)(federal court limited to deciding issues of constitutional dimension); Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir.1992); Hawkins v. Carroll, No. 03-1165-KAJ, 2005 WL 3336538 at *3 (D.Del. Dec.8, 2005) (finding a violation of state evidentiary law is not cognizable in a federal habeas proceeding); McLaughin v. Carroll, 270 F.Supp.2d 490, 514 (D.Del.2003) (same).

Failure to timely file objections may constitute a waiver of any appellate rights.

s/Francis X. Caiazza
Francis X. Caiazza
United States Magistrate Judge

Dated: June 1, 2007

cc:
JAMES MITCHELL
GJ-0412
S.C.I. at Mahanoy
301 Morea Road
Frackville, PA  17932